**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph Russell JOHNSON, Jr.,
Defendant-Appellant.**

**No. 74–1030.**

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1974.

Decided Sept. 11, 1974.

Timothy F. Kelly, Hammond, Ind., for defendant-appellant.

John R. Wilks, U. S. Atty., Joseph S. Van Bokkelen, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before PELL and SPRECHER, Circuit Judges, and CAMPBELL,* Senior District Judge.

PELL, Circuit Judge.

Defendant Joseph R. Johnson, Jr. was found guilty by a jury of robbing a United States post office and of placing the life of a mail custodian in jeopardy by use of a dangerous weapon, in violation of 18 U.S.C. § 2114.[1] Johnson was given the statutorily mandated sentence of 25 years' imprisonment.

The evidence indicated that on July 10, 1973, the Brunswick Postal Service in Gary, Indiana, was robbed of four money orders. During the robbery, Susan Hudak, the postal clerk from whom the money orders were taken, was shot in the hand by the robber.

Johnson raises three issues on appeal: (1) whether the district court erred in permitting certain evidence to be introduced by the Government; (2) whether the evidence was sufficient to prove that Johnson had placed Susan Hudak's life in jeopardy; (3) whether the jury should have been informed that the defendant, if convicted, would receive a sentence of 25 years' imprisonment.

I

Prior to Johnson's arrest, Susan Hudak and another postal clerk present during the robbery, Shellena Evans, made photographic identifications of the

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. 18 U.S.C. § 2114 provides:

"Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

defendant. A lineup was conducted, with the same witnesses present, after Johnson was arrested. The police records did not indicate that a positive identification had been made by either witness at the lineup.[2]

The district court, in a pretrial order, granted the defendant's motion to suppress the photographic identifications.[3] The defense made no motion to suppress the lineup confrontation.

At the trial, the district judge permitted the Government, on rebuttal, to inquire, to a limited extent, into the suppressed photographic identifications. Johnson contends that this amounted to reversible error. We disagree.

In direct examination, the prosecutor did not raise, at any time, the matter of eyewitness identification of Johnson. This issue was first brought up by the defense in cross-examination. In cross-examining Susan Hudak, the defense counsel limited his questions to the lineup confrontation.[4] In cross-examining

Shellena Evans, the defense again asked about the lineup [5] but then proceeded to ask the broad question:

"Q. And it is your testimony now that you were unable to identify Joseph Russell Johnson, Jr. as the assailant or the perpetrator of that robbery, is that correct?

A. Yes."

On redirect, the prosecutor was permitted to ask Shellena Evans:

"Q. Did you ever on any other occasion make an identification of the person who committed the robbery at the Brunswick Postal Station?

\* \* \* \* \* \*

A. Yes."

Later, on redirect rebuttal, the prosecutor asked Gerald Phillips, a postal inspector who was present during the lineup, the following questions:

"Q. Did you also on August 1, 1973, talk to the witness Shellena Ev-

---

2. At the trial, however, Susan Hudak testified, on cross-examination, that she *had* identified Johnson at the line-up. See note 4 *infra*.

3. The district judge did not explain, in his order, why he suppressed the photograph identifications. The defense, in seeking the suppression, had argued that the photospread was suggestive since Ms. Hudak had described the robber as having an "Afro" hair style and only Johnson's picture (of the 12 pictures used) showed a black male wearing an "Afro" hair style.

4. "Q. Okay, fine. Miss Hudak, I would like now to direct your attention to August 1, 1973 and ask you if on that day you had an opportunity to participate in a police lineup in the Police Department in Gary, Indiana?

A. Yes, I did.

Q. And I will further ask you if you were able to identify on that day your assailant?

A. Yes, I did.

Q. . . . Did you give any positive eyewitness identification on that day as to who was your assailant in that robbery?

\* \* \* \* \*

A. The person that I had picked out very much resembled the person that I remembered.

Q. Well now, is your testimony that he very much resembled the person as you remember him or is it your testimony that he was the assailant?

A. I would say that it was him.

Q. Did you say that on the day that that lineup was conducted?

A. I believe I did.

\* \* \* \* \*

Q. . . . Is it your testimony now that you positively identified Joseph Russell Johnson, Jr. at that lineup as your assailant?

A. Yes."

5. "Q. I would like now to direct your attention to August 1, 1973 and ask you if on that occasion you had an opportunity to participate in a police lineup?

A. Yes.

Q. And at that police lineup, did you identify the defendant in this case, Joseph Russell Johnson, Jr.?

Let me rephrase that. Did you positively identify the defendant in this case, Joseph Russell Johnson, Jr., as the assailant or the robber of the morning of July 10, 1973?

A. No, I didn't."

ans concerning a possible identification?

Q. Would you explain your answer, 'in effect.'

A. Yes, sir, I did.

Q. And in your presence did she make an identification?

A. In effect, she did, yes.

Q. Would you explain your answer, 'in effect.'

A. Well, she identified Joseph Russell Johnson, Jr., here, the defendant here, as the same person as she had subsequently picked out of—

MR. KELLY: Your Honor, I'm going to object to this question.

. . .

THE COURT: I'll sustain your objection. I'll strike the evidence. And I'll admonish the jury not to consider it."

As the district court noted, the defense counsel, in cross-examining Shellena Evans, opened the door on the issue of *all* pretrial identifications made by that witness. The last question and answer in the defense's cross-examination of Ms. Evans was not limited to the lineup confrontation; rather, the implication was that Shellena Evans had *never* made an eyewitness identification of Johnson.[6] This inference was unfair to the Government since Ms. Evans had, in fact, identified Johnson in a photospread even though the circumstances of the identification were such as to activate the exclusionary rule.

■■ In this situation, it was permissible to allow the Government to explore, in rebuttal, testimony which was not admissible on direct in order to prevent prejudice. United States v. Winston, 145 U.S.App.D.C. 67, 447 F.2d 1236, 1240 (1971); J. Wigmore, Evi-

dence § 15 (3d ed. 1940). The doctrine of curative admissibility has been specifically held to permit rebuttal use of pretrial identifications that are otherwise inadmissible because of constitutional violations. United States v. Winston, *supra* at 1240; United States v. Clark, 294 F.Supp. 44 (D.D.C.1968), aff'd sub nom. Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968), cert. denied 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

The doctrine of curative admissibility can, of course, only be used to prevent prejudice; it cannot be "subverted into a rule for injection of prejudice." United States v. Winston, *supra*, 447 F.2d at 1240. In the present case, however, the district court was very careful to limit the Government's use of the suppressed evidence. Shellena Evans only testified, on redirect, that on some occasion she made an identification of the person who robbed the Brunswick Postal Station. The prosecutor did not ask about the details of this identification or even whom Ms. Evans had identified. Gerald Phillips' testimony was even more limited. Phillips was only permitted to testify as to whether Ms. Evans had made an identification at the lineup, an issue clearly opened by the defense. That part of Phillips' answer which went beyond this matter was stricken by the district judge.

■ In any event, the proof of Johnson's guilt, even though in part circumstantial in nature, was so conclusive that if there had been error it would have been harmless. Johnson's fingerprints were found on the counter where the robbery occurred.[7] The defendant's fingerprints were also found on the stubs from the stolen money orders and on the

---

6. Shellena Evans apparently interpreted the defense's last question as referring only to the lineup confrontation since she answered it affirmatively. Ms. Evans' interpretation of the question, however, is irrelevant with respect to the impression made on the jury by the question, *i. e.*, that she at no time had ever identified Johnson as the robber.

7. This counter had been dusted before 7:30 A.M. on the day of the robbery with a treated cloth which would have removed any earlier fingerprints. The robbery occurred at approximately 10:30 A.M. and the post office was immediately closed thereafter.

stolen money orders themselves.[8] The money orders, furthermore, were cashed on July 20, 1973, in Johnson's hometown, Warren, Ohio. When arrested, on July 24, 1973, Johnson told a police officer that he had just returned from Warren, Ohio. Finally, Susan Hudak indicated that she had identified Johnson at the lineup. In light of this overwhelming evidence and the Government's limited inquiry into the photograph identifications, if there had been error it was harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

## II

The defendant next contends that the evidence was insufficient to prove that Johnson wounded Susan Hudak or put her life in jeopardy. This argument rests on two facts: (1) a firearm introduced into evidence by the Government did not have Johnson's fingerprints on it, and no ballistic test was performed to connect the weapon to the robbery;[9] (2) Susan Hudak testified that the firearm used in the robbery had a long barrel while the weapon introduced into evidence was a snub-nosed pistol. Aside from the fact that a victim looking at the business end of a gun may err in gauging the length of the barrel, the proof at trial negates these contentions of Johnson.

Susan Hudak was shot in the hand by the person who robbed the Brunswick Postal Station. As previously explained, the fingerprint and identification evidence overwhelmingly indicated that Johnson committed the robbery. Johnson's reliance on Newsom v.

United States, 335 F.2d 237 (5th Cir. 1964), is misplaced. The present case is not the situation adverted to in that case (at 239) of "mere presence at the scene of a criminal offense," because the individual, i. e.. Johnson, identified as being present, was also identified as the individual who fired the injurious shot. Further, the Government was not required to prove that a particular weapon was used in the robbery but only that, in effecting the robbery, Johnson placed Susan Hudak's life in jeopardy by use of a dangerous weapon. The evidence was clearly sufficient to prove the latter.

## III

The defendant's final contention is that the defense should have been permitted, in closing argument or in a jury instruction, to inform the jury that if they convicted Johnson, he would receive a mandatory sentence of 25 years' imprisonment. This contention is also without merit.

The statute in question does not provide the jury with any role with regard to punishment. The jury's only function in this case was to determine guilt or innocence. The issue of sentencing was wholly irrelevant to this determination. "To inform the jury that the court may impose minimum or maximum sentence . . . or other matters relating to disposition of the defendant, tend to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided." Pope v. United States, 298 F.2d 507, 508 (5th Cir. 1962), cert. denied, 381 U.S. 941, 85 S.Ct. 1776, 14 L.Ed.2d 704 (1965). See also Chapman v. United States, 443 F.2d

8. Ms. Hudak testified that the robber took the money orders before she could remove the stubs. The stubs were later found in a mail box located approximately seven blocks from the Brunswick Postal Station. The money orders themselves were recovered after they had been cashed in Warren, Ohio.

9. The weapon was found at the defendant's home. When the gun was offered into evidence, counsel for Johnson stated there was no objection to its admission. The gun had five cartridges and one empty Remington .22 caliber cartridge casing. The bullet shot in the post office was recovered only in fragments but these were sufficient to be indicative of a .22 caliber Remington cartridge.

**1378**

917, 920 (10th Cir. 1971); United States v. Del Toro, 426 F.2d 181, 184 (5th Cir. 1970), cert. denied, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 60.

The defense may wish to inform the jury of the mandatory sentence in the hope that the jury might "hang" or acquit simply because some or all of the jurors thought that the penalty was too severe. Congress, however, has already made the policy determination as to the severity of the sentence where a person is found guilty under this statute. It is not for the courts or the juries to make a new policy determination in such a situation.

Affirmed.